# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

Debra O'Donnell, *et al.*,　　　　　　　　　　　　Case No. 3:17CV2657

　　　　　Plaintiffs

　　　　　v.　　　　　　　　　　　　　　　　　**ORDER**

G. Michelle Yezzo, *et al.*,

　　　　　Defendants

　　　　　This is a civil rights case.

　　　　　Plaintiffs Debra O'Donnell and Sherry Parsons, who are sisters, bring claims arising out of their late father's conviction for murdering his wife (and plaintiffs' mother). After plaintiffs' father, James Parsons, had served twenty-three years in prison, the Ohio trial court vacated the conviction. A new trial was pending at the time of his death.

　　　　　Plaintiffs' complaint, which they file in both in a representative and individual capacity, raises substantive due process claims pursuant to 42 U.S.C. § 1983 against the City of Norwalk, Ohio, plus four individual defendants: G. Michelle Yezzo, a forensic scientist at the Ohio Bureau of Criminal Investigation (BCI), Daniel Cappy, BCI Laboratory Director; John Lenhart, BCI Superintendent; and Michael White, a Norwalk Police Detective. The complaint also asserts state law claims against the individual defendants.[1]

　　　　　Jurisdiction is proper under 28 U.S.C. § 1331.

---

[1] I refer to the City and defendant White as the "City Defendants" and defendants Yezzo, Cappy, and Lenhart as the "State Defendants."

In a November 26, 2018 order, *O'Donnell v. Yezzo,* 2018 WL 6169283 (N.D. Ohio) (*O'Donnell I*), I granted the State Defendants' motion to dismiss (Doc. 13) and granted in part and denied in part the City Defendants' motion for judgment on the pleadings (Doc. 26). Then, in a January 15, 2019 order, *O'Donnell v. Yezzo*, 2019 WL 201881 (N.D. Ohio) (*O'Donnell II*), I denied plaintiffs' motion to compel the Huron County, Ohio, Court of Common Pleas to release grand jury transcripts from the deceased father's state court proceeding (Doc. 19).

Those prior orders have prompted plaintiffs to file motions: 1) to amend their complaint (Doc. 37) and 2) for reconsideration of my order as to the motion to compel release of grand jury transcripts (Doc. 38).

For the reasons that follow, I deny the motions.

**Background**

I discussed the facts of this case at length in my previous orders and will not repeat them here.

**I. *O'Donnell I*: State Defendants' Motion to Dismiss**

In *O'Donnell I*, I dismissed, among other claims, plaintiffs' claims: 1) under *Brady v. Maryland*, 373 U.S. 83 (1963), against Yezzo, which alleged that she "knowingly prepared false evidence" and 2) for malicious prosecution against the individual defendants. That decision terminated Yezzo's participation in the case.[2]

I dismissed plaintiffs' claims against Yezzo because "[t]he Complaint contains no factual allegations identifying how Yezzo lied about the evidence." 2018 WL 6169283 at * 5. Thus,

---

[2] *O'Donnell I* also terminated Cappy and Lenhart's participation in the case. *See* 2018 WL 6169283.

2

plaintiffs had failed to plead facts sufficient to overcome Yezzo's qualified immunity defense. *Id.*

After *O'Donnell I*, the following claims remain pending: 1) a *Brady* claim against the City and White and 2) claims for intentional infliction of emotional distress, wrongful death, and loss of consortium against White. *See id.*

## II. *O'Donnell II*: Plaintiffs' Motion to Compel Release of Grand Jury Transcripts

Plaintiffs' motion to compel requested transcripts of the grand jury proceedings underlying the indictment against plaintiffs' late father so that plaintiffs could "assess the scope and accuracy of" their *Brady* claim and their malicious prosecution claim. (Doc. 19 at 2).

I found that plaintiffs did not meet their burden to show a "'compelling necessity,' that is, a 'particularized need'" for the grand jury transcripts. *O'Donnell II*, 2019 WL 201881 at *2 (quoting *United States v. Procter & Gamble Co.*, 356 U.S. 677, 681 (1958)). I so held, in part, because plaintiffs did not "connect the grand jury materials to any of the factual allegations in the complaint underlying th[eir *Brady*] claim." *Id.* at *4, n.5. I also held that plaintiffs' motion was moot insofar as it sought the grand jury transcripts to support the "now-dismissed malicious prosecution claim." *Id.* at *4.

Accordingly, I denied plaintiffs' motion because they did "not explain how or whether the grand jury materials would support any claims that remain pending." *Id.*

## Discussion

### I. The Motion to Amend

Plaintiffs request leave to amend their complaint under Fed. R. Civ. P. 15. Their motion seeks to remedy the pleading deficiencies I identified in *O'Donnell I* by adding factual allegations supporting their *Brady* claim against Yezzo. (*See* Doc. 37-1).

3

## A. The Court Will Not Freely Give Leave to Add Allegations Against a Dismissed Defendant

"Under Rule 15, a court may grant permission to amend a complaint 'when justice so requires.'" *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010). Normally, a court will "freely' do so." *Id.* (citing Fed. R. Civ. P. 15(a)).

Plaintiffs' motion does not, however, come in the normal course. Plaintiffs wish to add allegations supporting their claims against Yezzo after I dismissed her from the case.

"Rule 15's permissive amendment policy should not permit plaintiffs to use the court as a sounding board to discover holes in their arguments" and then fill those holes "by amending their complaint to take account of the court's decision." *Kuyat v. BioMetric Therapeutics, Inc.*, 747 F.3d 435, 445 (6th Cir. 2014) (quoting *Leisure Caviar, LLC*, *supra*, 616 F.3d at 616 (internal quotations omitted)). Accordingly, "[w]hen a party seeks to amend a complaint after an adverse judgment, it must . . . shoulder a heavier burden. Instead of meeting only the modest requirements of Rule 15, the claimant must meet the requirements for opening a case established by Rules 59 or 60." *Leisure Caviar, LLC*, *supra*, 616 F.3d at 616 (internal citations omitted).

Plaintiffs argue that the rule announced in *Leisure Caviar* does not apply in this case because "[j]udgment has not been entered," and *O'Donnell I* did not adjudicate all of their claims. (Doc. 43 at 3 (citing Fed. R. Civ. P. 54(a)). Instead, citing *Kottmyer v. Mass*, 436 F.3d 684 (6th Cir. 2006), they submit that I should grant leave to amend because the amendment they propose is not futile. I disagree. (Doc. 37 at 3).

The plaintiffs in *Kottmyer*, like plaintiffs here, sought leave to amend their complaint after dismissal of some, but not all, their claims. 436 F.3d at 687. The court did not apply the standard announced in *Leisure Caviar*, *supra*. Instead, it determined that the proposed amendment "would be futile," which precluded amendment under Rule 15. *Id.* at 692.

4

Critically, however, the plaintiffs in *Kottmyer*, unlike plaintiffs here, moved to add allegations against a defendant who had remained in the case after the court's prior partial dismissal. *See id.* The decision in *Kottmeyer*, then, does not support plaintiffs' position.

The Sixth Circuit, albeit in dicta, approved applying the burden announced in *Leisure Caviar*, *supra*, where the trial court had awarded the targeted defendant summary judgment, but the case remained pending. *See Crouch v. Honeywell Int'l, Inc.*, 720 F.3d 333, 344-45 (6th Cir. 2013) (citing *Leisure Caviar*, *supra*, 616 F.3d at 615-616) (appeal denied on other grounds). In *Crouch*, the court explained that, because plaintiffs "s[ought] to amend [their] complaint *after* losing the case," they had to "provide a compelling explanation to the district court for granting the motion." *Crouch*, *supra*, 720 F.3d at 344-45 (emphasis supplied); *see also In re Cmty. Mem'l Hosp.*, 2019 WL 1231081 (Bankr. E.D. Mich.) (requiring plaintiff to meet post-judgment burden when seeking to add allegations against dismissed defendants following court's decision granting in part and denying in part motion to dismiss).

I likewise apply the standard announced in *Leisure Caviar* because my prior order terminated Yezzo from the case.

### B. Plaintiffs' Allegations Are Not Based on Newly Available Evidence

Under *Leisure Caviar*, *supra*, plaintiffs "must provide a compelling explanation to the district court for granting the motion" for leave to amend. 616 F.3d at 617. I may grant such leave if plaintiffs show "(1) a clear error of law; (2) *newly discovered evidence*; (3) an intervening change in the law; or (4) a need to prevent manifest injustice." *Crouch*, *supra*, 720 F.3d at 345 (internal quotations and citations omitted) (emphasis added).

"A court acts within its discretion in denying a Rule 15 and Rule 59 motion on account of 'undue delay'—including delay resulting from a failure to incorporate 'previously available'

5

evidence, *GenCorp*, 178 F.3d at 834—and ought to pay particular attention to the movant's explanation for failing to seek leave to amend prior to entry of judgment." *Leisure Caviar*, *supra*, 616 F.3d at 616 (citing *Morse v. McWhorter*, 290 F.3d 795, 799 (6th Cir. 2002)).

Plaintiffs repeatedly posit that they "have acted in good faith and without delay." (Doc. 37 at 3, 4; *see also* Doc. 43 at 2, 4). Yet, rather than amend their complaint in the nearly one year before *O'Donnell I*, plaintiffs waited until January 31, 2019, over two months after that order, to ask for leave to amend. They make no effort to justify either the pre- or post-order delay.

Moreover, plaintiffs' allegations rely on evidence already available to them. *See GenCorp, Inc.*, *supra*, 178 F.3d at 834 ("To constitute 'newly discovered evidence,' the evidence must have been previously unavailable.").

The factual allegations they wish to add allege that Yezzo

- Could not have seen letters from the word "Craftsman" on Mrs. Parsons's bedsheet from a breaker bar with recessed lettering, and, therefore, she fabricated this evidence;

- Did not see, as she claimed, the breaker bar's "unique end" on the bedsheet because the breaker bar she tested had no unique end;

- Failed to verify her test results with a colleague; and

- Placed these findings in one report she gave the prosecutor before the grand jury convened and another she gave the prosecutor before trial.

(*See* Doc. 37-1 at 8, 9, ¶¶ 36, 40).

The original complaint describes Yezzo's test results, the breaker bar, and her failure to verify results. It also states that she documented her findings in two reports. (*See* Doc. 1 at 8, 9, ¶¶ 36, 40). The allegations in the proposed complaint, then, simply color the original allegations with details that could have illumined the original complaint. They do not derive from newly discovered, previously unascertainable information. Indeed, plaintiffs do not argue as much.

I therefore deny plaintiffs' motion for leave to amend.

## II. The Motion to Reconsider Compelling
## Release of Grand Jury Transcripts

Plaintiffs ask me, pursuant to Fed. R. Civ. P. 54(b), to reconsider my rejection in *O'Donnell II* of their request to compel disclosure of grand jury transcripts.[3]

"Traditionally, courts will find justification for reconsidering interlocutory orders when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 Fed. App'x 949, 959 (6th Cir. 2004) (citing *Reich v. Hall Holding Co.*, 990 F. Supp. 955, 965 (N.D. Ohio 1998) (Aldrich, J.)).

Plaintiffs claim that, here, setting aside *O'Donnell II* will correct a clear error and prevent manifest injustice.

### A. There Was No Clear Error

Plaintiffs submit that I clearly erred when I determined that they failed to demonstrate a particularized need for the grand jury transcripts because they did "not explain how or whether th[ose] materials would support" their *Brady* claim against White. (Doc. 38 at 5 (quoting *O'Donnell II*, *supra*, 2019 WL 201881 at *4)). I disagree.

First, I note that plaintiffs assert that I mistakenly stated that they did "not allege that White testified before the grand jury." (Doc. 38 at 6). But they did not cite, and I have not found, any allegations in the complaint claiming that White gave grand jury testimony. (*See* Doc. 19 at

---

[3] As I noted above and in *O'Donnell II*, plaintiffs seeking grand jury transcripts must show a "compelling necessity, that is, a particularized need" for those materials. 2019 WL 201881 at *2 (quoting *Procter & Gamble*, *supra*, 356 U.S. at 681) (internal quotations omitted). This requires plaintiffs to "show that 'the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed.'" *Id.* at *4 (quoting *Douglas Oil Co. v. Petrol Stops Nw.*, 441 U.S. 211, 222 (1979)).

7

2; Doc. 1). Their statement in their brief supporting the motion to compel that "White . . . falsely testified or procured false testimony from other witnesses to obtain an indictment," (Doc. 19 at 2), "is not a part of the pleadings," or otherwise properly part of the record. *See Crouch*, *supra*, 720 F.3d at 345 (explaining motions are not pleadings).[4]

In any event, plaintiffs have an alternative, and possibly better, source for the information they seek: White himself. Plaintiffs wish to learn about: 1) White's grand jury testimony, if he gave any; 2) "[w]hich breaker bar [White] . . . show[ed] the jury and share[d] with the prosecutor;" 3) whether White disclosed "the obvious problems with the Yezzo opinions;" and 4) whether White "reference[d] the forensic report or Yezzo's findings that he conspired with Yezzo to falsify." (Doc. 38 at 5). As I explained in my prior opinion, "[p]resumably, deposing White would" reveal those facts. *O'Donnell II,* 2019 WL 201881 at *4 n.5.

Accordingly, at this point, plaintiffs do not need the grand jury transcripts to obtain the information they desire. Before calling on me to compel a state court to disclose its grand jury material, plaintiffs must, at the very least, first try other ways of getting the same, or substantially equivalent information. That is, they must try to find out from White what he may have told the grand jury.[5] *See United States v. White Ready-Mix Concrete Co.*, 509 F. Supp. 747, 749-50 (N.D.

---

[4] The complaint does not allege that White was a grand jury witness. Had plaintiffs made such an allegation in the complaint, based on a reasonable, good faith belief that White gave grand jury testimony, that allegation would have been deemed true vis-à-vis a motion to dismiss. *E.g.*, *Doe v. Miami Univ.,* 882 F.3d 579, 597 (6th Cir. 2018). That might have provided support in the record for plaintiff's assumption in their brief that White was a grand jury witness.

Granted, it is highly likely that an investigating officer would be a grand jury witness in a homicide case. But I don't believe I could take judicial notice that White was a grand jury witness in James Parsons's criminal case. And I know of no basis in law on which I could *sua sponte* implant that likelihood into a complaint that was otherwise silent on the subject.

[5] The "traditional veil of secrecy surrounding grand jury proceedings" does not cover "the specific questions propounded to and specific answers given by a particular witness." *In re*

Ohio 1981) (Lambros, J.) (finding no compelling necessity for grand jury transcripts where petitioners propounded interrogatories upon, but did not try to depose, individuals who gave grand jury testimony). [6]

## B. Denying Disclosure Will Not Cause Manifest Injustice

Plaintiffs next argue that I must reconsider my decision to avoid manifest injustice. Specifically, they claim that "it was unjust to dismiss" their claims against Yezzo "before [plaintiffs could] review the grand jury transcripts." (Doc. 38 at 6-7).

---

*Grand Jury Summoned October 12, 1970*, 321 F. Supp. 238, 240 (N.D. Ohio) (Young, J.) (citing 38 Am. Juris. 2d, Grand Jury, § 41 (1968)). Indeed, neither the Ohio nor the Federal Rules of Criminal Procedure "impose any obligation of secrecy on witnesses." Fed. R. Crim. P. 6(e) advisory committee's note 2 to 1944 adoption; *see also King v. Jones*, 319 F. Supp. 653, 657 (N.D. Ohio 1970) (Green, J.) (applying Ohio rules), *vacated on other grounds*, *King v. Jones*, 450 F.2d 478 (6th Cir. 1971), *cert. granted*, *judgment vacated on other grounds*, *King v. Jones*, 405 U.S. 911 (1972).

Accordingly, plaintiffs may ask White about his grand jury testimony, and, were he to assert that Ohio R. Crim. P. 6(E) or Fed. R. Crim P. 6(e) bars him from disclosing such testimony, I would have discretion to order him to testify. *See William Iselin & Co. v. Ideal Carpets, Inc.*, 510 F. Supp. 343, 346 (N.D. Ga. 1990) (district court has discretion to order deponent to disclose grand jury testimony) (citing *Pittsburg Plate Glass Co. v. United States*, 360 U.S. 395 (1959)) (additional internal citation omitted).

Granted, it may well be that White can recall relatively little of what he told the grand jury. Or, it's possible he may be able to recall his testimony. The point is that, before I can pry a grand jury transcript from the hands of a state court, plaintiffs must find out what they can from a former grand jury witness.

[6] Once plaintiffs have undertaken to find out what they can from White about his grand jury testimony, it may be possible for them to have me revisit the issue by calling on me to obtain the transcripts, if any, of his grand jury testimony for my *in camera* review. *See Craig v. Lima City Schs. Bd. of Educ.*, 384 F. Supp. 2d 1136, 1144 (N.D. Ohio) (Dowd, J.) (reviewing grand jury transcripts *in camera* before determining whether defendants had particularized need to compare plaintiff-victim's testimony before the grand jury with her deposition testimony in civil case).

This is not to say that I would grant that request, or that, even if I did, that I would find that plaintiffs then had shown a particularized need to get the transcripts.

9

First, plaintiffs submit that my order denying them access to the grand jury transcripts caused manifest injustice because they "could have amended the complaint with additional factual allegations . . . and avoided dismissal." (Doc. 38 at 6-7).

"[C]oncrete confirmation of actionable conduct is not necessary when a party has sufficient facts to assert a plausible cause of action; the accumulation of confirmatory evidence can be left to the discovery process, which is one of its prime purposes." *Plastech Holding Corp. v. WM Greentech Auto. Corp.*, 2017 WL 5661342, *4 (E.D. Mich.) (citing *Brown v. Tellermate Holdings Ltd.*, 2014 WL 2987051, *16 (S.D. Ohio)). The court in *Plastech Holding Corp.* denied a party leave to amend its counter-claim because the counter-claimant failed to raise it, despite knowing its basis, until the counter-claimant obtained confirmatory evidence. *Id.*

Similarly, as I explained above, plaintiffs knew the basis for their claims against Yezzo before they sought leave to amend their complaint. They had such knowledge without access to the grand jury transcripts. And they did not have those transcripts before filing their motion to amend.

Plaintiffs therefore suffer no prejudice respecting the dismissed allegations.

Next, plaintiffs assert that the grand jury transcripts could have revealed additional claims against Yezzo. Presumably, however, plaintiffs can depose Yezzo, who appears to remain an important fact witness, about, among other relevant topics, potentially actionable conduct not presently known. If Yezzo's testimony, which may constitute "newly discovered evidence," discloses grounds for new claims against her, plaintiffs may seek to obtain leave to add those claims to the case. *See Crouch*, *supra*, 720 F.3d at 345 (stating grounds for amending complaint

after dismissing a defendant).[7] But plaintiffs have not at this point shown that they need the grand jury transcripts to determine whether such claims exist.

The law, that Jealous Mistress, guards few, if any secrets more vigorously than grand jury transcripts. So far plaintiffs have failed to break her shield. I therefore overrule their motion to reconsider my decision not to compel the Huron County Court of Common Pleas to produce the transcripts.

**Conclusion**

It is, therefore,

ORDERED THAT

Plaintiffs Debra O'Donnell and Sherry Parsons's motion to amend complaint (Doc. 37) and motion for reconsideration to compel release of grand jury transcripts (Doc. 38) be, and the same hereby are, denied.

/s/ James G. Carr
Sr. U.S. District Judge

---

[7] I make no prejudgment, of course, on how, on hearing defendants' response to any such motion, I would rule.