**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Debra O'Donnell, et al.,                                         Case No. 3:17CV2657

         Plaintiffs

         v.                                                       **ORDER**

G. Michele Yezzo, et al.,

         Defendants

This is a civil rights case under 42 U.S.C. § 1983 and Ohio tort law in which, following my decision granting the state defendants' motion to dismiss and granting in part and denying in part the city defendants' motion to dismiss, *O'Donnell v. Yezzo*, 2018 WL 6169283 (N.D. Ohio 2018), four claims remain:

1. Defendant Charles Michael White violated *Brady v. Maryland*, 373 U.S. 83 (1963), by withholding evidence that: (a) he submitted "the wrong" breaker bar to defendant Michele Yezzo for forensic testing; and (b) Yezzo's forensic opinion linking that breaker bar to the Parsons murder was false and the product of an unreliable methodology. Plaintiffs also allege that the City of Norwalk is liable for this violation under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

2. White intentionally inflicted emotional distress on James Parsons by conducting a flawed investigation, which included ignoring exculpatory evidence, submitting "the wrong" breaker bar for forensic testing, allowing Yezzo to produce a false report, and arresting Parsons without probable cause.

3. White caused Parsons's wrongful death. Plaintiffs base this claim on the same acts that underlie their *Brady* and IIED claims.

4. A loss of consortium claim against White and the City of Norwalk.

Now pending are the parties' competing discovery schedules and case management plans. (Docs. 49, 51).

The plaintiffs have proposed taking the depositions of sixteen witnesses. Plaintiffs acknowledge that many of the proposed deponents testified under oath at James Parsons's criminal trial in 1993, but contend that "the goal and scope of that testimony was likely curtailed," and that "issues of wrongful death, damages, and facts beyond the criminal defense or prosecution theories would not have been addressed in their testimony." (Doc. 49, PageID 430).

Plaintiffs ask that I set February 28, 2020 as the cut-off date for fact discovery; June 5, 2020 as the expert discovery cut-off date; and July 3, 2020 for the filing of dispositive motions.

For their part, defendants contend that plaintiffs should depose only three of the sixteen witnesses. Defendants argue that plaintiffs' request "is not proportional to the needs of this case[.]" (Doc. 51, PageID 437). Their proposed case schedule proceeds on something like an expedited basis: fact discovery would close on December 31, 2019; expert discovery would close a month later; and dispositive motions would be due on February 28, 2020.

Having reviewed these submissions in light of plaintiffs' complaint and my order on the defendants' motions to dismiss, I make the following rulings.

### A. Parties' Agreement and Moot Request

The parties agree that the depositions of White, Yezzo, and Michael Reggles (a former Chief of the Norwalk Police Department) may go forward. Furthermore, defendants have

represented that Ron Dye (a former coworker of Yezzo) passed away, so plaintiffs' request to depose him is moot.

### B. Waiver of Qualified Immunity Objections to Discovery

Defendants claim that "there is insufficient factual evidence to support a *Monell* claim or to overcome White's entitlement to qualified immunity." (Doc. 51, PageID 439). Because White did not raise a qualified immunity defense in a Rule 12(b) motion, however, I find that he has "waive[d] the right to avoid discovery" or seek to limit its scope on qualified immunity grounds (though he may of course raise the defense in a motion for summary judgment). *English v. Dyke*, 23 F.3d 1086, 1090 (6th Cir. 1990).

### C. Phillip Patterson

Plaintiffs seek to depose Phillip Patterson, a friend of Parsons, about Parsons's "deterioration . . . while in prison and the impact of the wrongful conviction" on him. (Doc. 49, PageID 431). Defendants do not give a specific reason for opposing this request beyond their general proportionality objection. (Doc. 51, PageID 436–39).

Because Patterson's testimony is likely to be relevant to at least one element of plaintiffs' IIED claim – that "the mental anguish suffered by [Parsons] is serious and of a nature that no reasonable man could be expected to endure it," *Burkes v. Stidham*, 107 Ohio App. 3d 363, 374 (1995) – the plaintiffs may depose him.

### D. Breaker Bar Witnesses

Plaintiffs also wish to depose four witnesses who either had breaker bars that authorities collected during the initial investigation (Neil Burras, Gary Hoover, and Johnny Ott) or "have facts related to the various breaker bars that were collected by law enforcement and tested by forensic experts in this case" (Norman Ott). (Doc. 49, PageID 430–31).

3

Defendants respond that Burras and Johnny Ott testified at the 1993 trial and "were thoroughly questioned regarding their involvement with the breaker bar submitted as evidence, as well as claims of other possible breaker bars." (Doc. 51, PageID 438).

The crux of the plaintiffs' *Brady* claim, and a key component of their tort claims, is the allegation that White knowingly gave a breaker bar with recessed letters – a breaker bar that authorities did not retrieve from Burras, and that White allegedly did *not* believe was the murder weapon (Doc. 1, Page ID 8 at ¶¶34–35)[1] – to Yezzo for forensic testing. Yezzo then conducted a dubious forensic analysis of that breaker bar and other evidence from the crime scene (as White allegedly knew or suspected that she would), and the prosecution relied on Yezzo's opinions to link Parsons to the murder via the breaker bar.

Given how critical the breaker bar evidence is to plaintiffs' claims, and the apparent need to establish precisely which breaker bar came from which source, plaintiffs may depose Burras, Ott,[2] and Hoover. My ruling rests not only on the importance of these witnesses' testimony to plaintiffs' claims, but also on the defendants' failure to show with any kind of particularity that the trial testimony would be adequate to establish those points related to the breaker bar evidence that plaintiffs need to prove their case.

Finally, I will deny the request to depose Norman Ott. Plaintiffs have not made any showing regarding the kind of information "related to the various breaker bars" that Norman Ott has. Nor do plaintiffs explain why such information is unlikely to emerge from the testimony of Burras, Johnny Ott, and Hoover. In these circumstances, the proposed deposition is not in

---

[1] According to plaintiffs, "White alleged that the breaker bar retrieved in 1981 from Mr. Parsons' friend Neil Burras was the murder weapon." (Doc. 1, PageID8 at ¶34).

[2] In addition, plaintiffs allege that Johnny Ott was "a potential suspect" in the murder. (Doc. 49, PageID 431). Accordingly, his testimony may be relevant to plaintiffs' tort claims, which allege that White knowingly ignored evidence that would have exculpated Parsons.

4

proportion to the needs of the case or the anticipated benefit that the requested deposition would yield.

### E. Original Case Investigators

Next, plaintiffs seek to depose Dean Strimple and Greg Mehling, who investigated the murder in 1981. Plaintiffs contend that Strimple can testify to "the status of the evidence" in 1981 and when the trial occurred in 1993, and that Mehling "participated in the collection of breaker bars." (Doc. 49, PageID 430).

I deny plaintiffs' request to depose these witnesses, given that both testified at Parsons's trial (Doc. 51, PageID 438) about the collection of the breaker bars, and plaintiffs have not made any showing that the information likely to be gained from the depositions is not available in the trial transcripts or the investigative file. Nor, finally, have plaintiffs claimed with any specificity that Strimple's or Mehling's deposition testimony is likely to be materially different from their trial testimony, such that it would support one or more of their pending claims in a way that their trial testimony cannot.

### F. Yezzo's Supervisors

Plaintiffs also wish to depose Daniel Cappy, the Laboratory Director at the Ohio Attorney General's Bureau of Criminal Investigation (BCI) at all times relevant to this case; John Lenhart, the Superintendent of BCI at all relevant times; and Daniel Chilton, who was one of Yezzo's "supervisors."

Plaintiffs wish to depose these witnesses on five subjects: 1) their knowledge of "specific complaints of Yezzo fabricating evidence to satisfy law enforcement and officers specifically seeking out Yezzo to test evidence"; 2) an investigation into Yezzo's work during which subordinates "reported directly to Yezzo's supervisors that Yezzo was fabricating evidence";

5

3) the contents of Yezzo's personnel file; 4) "the extent to which her problems at work were shared with prosecutors and law enforcement who relied on her test results"; and 5) "Yezzo's reputation for falsifying evidence." (Doc. 49, PageID 431–32).

Defendants oppose this request on the ground that "it is unlikely" that Cappy and Lenhart "have any information that would relate to the claims against the City [of Norwalk] and former Norwalk police officer White." (Doc. 51, PageID 438). Their papers do not address Chilton specifically.

I reject defendants' argument that it is unlikely that these witnesses have no information relevant to plaintiffs' claims.

Plaintiffs allege that, as part of White's effort to reopen the case and investigate the Parsons murder, he submitted "the bed sheet and the Craftsman breaker bar with the recessed letters" to four different law enforcement agencies, including BCI. (Doc. 1, PageID 7–8 at ¶¶31–33). "Not getting the answer he wanted" from those agencies – none could link the breaker bar to the murder – White submitted this evidence to BCI again, this time specifically to Yezzo. (*Id.*, Page ID 8 at ¶33).

These allegations, combined with further allegations that Yezzo "was known by the BCI to 'stretch the truth to satisfy a department'" (*id.*), yield a plausible inference that White expected Yezzo to, or believed that she would, concoct a report implicating Parsons, regardless of whether the evidence warranted that conclusion.

For that reason, the deponents' testimony regarding the extent to which BCI personnel discussed Yezzo's "problems" with prosecutors and law enforcement, as well has her general reputation for "falsifying evidence," is relevant to plaintiffs' claims against White: if White knew

about Yezzo's reputation and willingness to stretch the truth, that would explain why White submitted the bedsheet and the wrong breaker bar for her review.

The first and second categories of information outlined above, however, are not relevant to the claims against White and the City of Norwalk. Whether Cappy, Lenhart, and Chilton knew about complaints that Yezzo fabricated evidence, and whether subordinates reported such complaints to them, is not relevant, absent some nexus between this information and White.

Finally, plaintiffs may depose these witnesses about Yezzo's personnel file, given that the contents of that file would tend to establish (at least based on the state trial court's discussion of the file in its postconviction decision vacating Parsons's conviction) that Yezzo was, in fact, crooked.

### G. Other Suspect Witnesses

Finally, plaintiffs request to depose Bob Russ, an investigative journalist, and Daniel Chill, a cousin of Johnny Ott who learned from Ott that Ott "was worried he would get arrested" and who told Chill that "his hair was in Barbara Parsons's room because she had cut his hair there." (Doc. 49, PageID 432).

Defendants do not specifically address these witnesses in their papers, beyond their general proportionality objection. (Doc. 51, PageID 436–39).

I will permit plaintiffs to depose these witnesses, given that information Russ and Chill may have regarding potential or plausible other suspects in the murder may support plaintiffs' tort claims – namely, that White ignored potentially exculpatory evidence.

**Conclusion**

It is, therefore,

ORDERED THAT:

1. Plaintiffs' request to take depositions be, and the same hereby is, granted in part and denied in part as provided above.

2. Fact discovery to close on February 28, 2020.

3. Plaintiffs to disclose expert witness(es) on or before March 31, 2020, and defendants to disclose expert witness(es) on or before May 1, 2020.

4. Expert discovery to close on June 5, 2020.

5. Defense motion for summary judgment due July 2, 2020; plaintiffs' opposition due July 30, 2020; and defendants' reply due August 14, 2020.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge